**THE GIESZL FIRM**
3200 North Central Avenue, Suite 1500
Phoenix, Arizona 85012
Tel  602-277-0772    Fax 480-287-9589
Holly R. Gieszl, SBN 013845
holly@gieszlfirm.com

**Frazer Ryan Goldberg & Arnold, LLP**
Joshua N. Mozell, SBN 030865
3101 North Central Avenue, Suite 1600
Phoenix, Arizona 85012
Tel 602-277-2010
jmozell@frgalaw.com

Counsel for PLAINTIFF

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Wallace,<br><br>    Plaintiff,<br><br>    vs.<br><br>The State of Arizona; Cara Christ; Aaron Bowen; Steven Dingle; John Doe 1-10, Jane Doe 1-10.<br><br>    Defendants. | Case Number: 2:19cv-05117-GMS<br><br>**SECOND AMENDED COMPLAINT** |

For his Complaint against the Defendants, Plaintiff Aaron Wallace ("Aaron") alleges as follows:

## I.    JURISDICTION AND VENUE

1. Plaintiff brings this action under Arizona's constitution and tort law, the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983, which is the federal statute that provides compensatory and punitive damages for violations of Federal constitutional rights.

2. This court has removal jurisdiction over Aaron's federal claims pursuant to 28 U.S.C. § 1441 et seq., and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2).

4. Plaintiff timely served a proper notice of claim pursuant to A.R.S. § 12-821.01 on Defendants the State, Cara Christ, and Aaron Bowen, which was denied.

## II. THE PARTIES

5. Each of the above paragraphs is incorporated by reference as if fully set forth here verbatim.

6. At all times relevant, Aaron was a patient committed to the custody of Arizona State Hospital ("AzSH") by the Superior Court of Pima County.

7. Defendant, the State of Arizona ("the State") is a governmental entity that acts through its employees, agents, and independent contractors including without limitation each of the other Defendants. The State has a statutory duty to provide mental health services to residents of Arizona pursuant to A.R.S. §§ 36-104, 36-550.01, and 36-3403(B)(1).

8. The State has a non-delegable duty to provide for the safety and well-being of patients in the care, custody, and control of its state hospital. The State is vicariously liable under the principles of *respondeat superior* for the actions and inactions of its employees, agents and independent contractors of the AzSH, including each individual defendant named in this action, as to claims asserted as the result of violations of Arizona law because, at all relevant times, Defendants and all other relevant employees, agents and independent contractors were acting within the scope and course of their employment with the AzSH.

9. As Director of the ADHS, Dr. Christ has overall responsibility for the operation of the AzSH in accordance with Arizona and federal law. Dr. Christ is appointed by Arizona's governor. Pursuant to A.R.S. § 36-204, Dr. Christ's statutory duties as the Director of ADHS include but are not limited to adopting rules for inpatient treatment at AZSH and adopting rules for the administration of AZSH. See A.R.S. § 36-204.

10. The AzSH currently provides long-term psychiatric care in three separately licensed facilities on one campus, including: (i) a "civil" hospital for patients committed under Title 36 and a forensic hospital for patients like Aaron committed under Title 13 of the Arizona Revised Statutes. Patients in the forensic hospital have been committed by a judge as part of criminal justice proceedings, typically because the patient was adjudicated to be guilty at except insane ("GEI")at the time of the commission of a felony crime.

11. At all times pertinent, the AzSH was certified as a state-run hospital for purposes of Medicaid, Medicare, the Arizona Health Care Cost Containment System ("AHCCCS"), and the Arizona Long-Term Care System ("ALTCS").

12. The operation of the AzSH is maintained by Arizona Department of Health Services ("ADHS"), with the ADHS Director providing statutorily mandated direct oversight of the AzSH. The AzSH is governed by a Governing Body, which provides overall guidance for hospital leadership. In addition to the Director of ADHS, who serves as the Governing Body's Chairperson, the Chief Medical Executive Officer and the Chief Medical Officer, along with most of the AzSH executive leadership, also serve on the Governing Body. https://azdhs.gov/documents/az-state-hospital/about/scope-of-services.pdf.

13. The ADHS is a non-jural governmental entity that acts through its employees, agents, and independent contractors who fulfill various clinical and administrative duties on behalf of the State at the AzSH on behalf of patients committed to AzSH. The ADHS is not a licensed health care provider.

14. Aaron Bowen, Psy.D. ("Dr. Bowen"), is the designated Superintendent and Chief Executive Officer of AzSH. Dr. Bowen acts, subject to the approval of Dr. Christ as the Director of ADHS, with authority for certain delegated responsibilities as to the daily operation and administration of AZSH. Dr. Bowen is "directly responsible for carrying out the purposes for which the hospital is maintained." Among his responsibilities is the management of the AzSH patient units in a manner that provides a safe and secure environment for patients, including Aaron, in particular by preventing

attacks by patients like Reuben Murray, who are known to be dangerous, violent, and assaultive.

15. Defendant Stephen Dingle, M.D., ("Dr. Dingle") is the Chief Medical Officer (CMO) of the AzSH and reports to Dr. Bowen. Under A.R.S. §36-205, Dr. Dingle is responsible for the "clinical administration" of the AzSH. Dr. Dingle's duties include providing a safe and secure clinical environment for patients, including Aaron, by preventing attacks by patients known to be dangerous, violent, and assaultive.

16. Joselyn Tupas Miliner, R.N., is a licensed registered nurse employed by the State of Arizona and working at the AzSH. She was responsible for Aarons' nursing care when he was attacked by Reuben Murray. Among her responsibilities were keeping patients, including Aaron, safe from attacks by other patients like Murray who were known to be dangerous, violent, and assaultive.

17. On information and belief, the State, the ADHS, and the AzSH employ and contract with individuals to provide management, supervisory, administrative, and clinical services to patients, including Aaron.

18. At all times relevant, each Defendant was acting in the course and scope of his or her employment, for benefit of the AzSH, the ADHS, and State of Arizona, and each is named in his or her official and individual capacity for liability in each capacity as permitted under applicable state and/or federal law.

19. At all relevant times, each defendant and all defendants held themselves out as competent and qualified in providing and/or administering health care services to individuals committed to AzSH and as able and willing to comply with the appropriate professional standards in their respective fields.

20. Upon information and belief, the fictitiously named Defendants, Does 1-10, Black and White Entities 1-5, and ABC Partnerships 1-10, are liable for the acts complained of herein, but these Defendants' true identities are unknown to the Plaintiff. Plaintiff may request leave of the Court to amend his Complaint to insert the true names of the fictitiously named Defendants when said names are known to the Plaintiff, and to allege specifically their claims against said Defendants.

-4-

21. The State is liable under applicable State and Federal law for all acts and omissions by AZDHS and AZSH, their employees, agents, and independent contractors based upon non-delegable duties, agency, vicarious liability, and *respondeat superior* liability.

### III.   GENERAL ALLEGATIONS APPLICABLE TO EACH COUNT

22. Each of the above paragraphs is incorporated by reference as if fully set forth her verbatim.

23. This matter arises from the injuries Aaron suffered in separate attacks by two other patients. In fact, Aaron was twice attacked each of the patients. Aaron was attacked twice in the early hours of October 2017 by Murray. Aaron was attacked twice on or about December 20, 2017 by Duey.

24. Murray and Duey has been hospitalized at AzSH multiple times for long periods and were well-known to each Defendant as dangerous and assaultive. Each had assaulted other patients and staff. Each was supposed to be closely monitored and controlled to prevent him from attacking and injuring patients and staff. In fact, each roamed the units unsupervised and uncontrolled and, as a result, each was able to get access to Aaron and attack and injure him.

24. At all times relevant, each individual Defendant knew that Aaron was "seriously mentally ill", that is, as the result of a mental disorder as defined in A.R.S. § 36-501, Aaron "was so impaired as to interfere substantially with [his] capacity to remain in the community without supportive treatment or services of a long-term or indefinite duration. [His] mental disability [was] severe and persistent, resulting in a long-term limitation of [his] functional capacities for primary activities of daily living such as interpersonal relationships, homemaking, self-care, employment and recreation." A.R.S. § 36-550(4). Aaron was highly vulnerable, and he was totally dependent on the staff at AzSH, and the individual defendants, to protect him from injury by dangerous, assaultive patients.

25. In December of 2018, the AzSH recommended to the Arizona Psychiatric Security Board that at the end of Aaron's current term of commitment on January **31,**

2019, Aaron be referred for an evaluation to determine whether he should be civilly committed to an indefinite term at the AzSH. The PSRB acted upon the AzSH recommendation and Aaron underwent the recommended evaluation.

26. Each Defendant and owed Aaron duties of care, protection, and safety under Federal and state common law, statutes, and regulations. Each Defendant failed in breached each of these duties.

27. The duties owed by each Defendant to Aaron under Arizona law include, but are not limited to Arizona's common law relating to negligence and gross negligence, and those set forth in § 46-451 *et seq.*, 32-1631 *et seq.*, 36-466 *et seq.*, and Arizona Administrative Code R4-19-101 *et seq.*, and R9-10-901 *et seq.*

28. The duties owed by each Defendant to Aaron under federal law include the protections afforded by the Eighth Amendment, the due process clause of the Fourteenth Amendment and federal statutes and rules governing the provision of care to patients involuntarily committed to state mental health hospitals.

29. Each defendant sued in his or her personal capacity has liability for the attack on Aaron and his injuries under 42 U.S.C. §1983. Defendant Miliner personally participated in Aaron's care at the time of the attack by Murray. Defendants Christ, Bowen and Dingle, who were supervisors, participated in or directed constitutional violations by subordinates, or had knowledge of and failed to act to prevent those violations. Defendants Christ, Bowen, and Dingle each set in motion a series of acts by others, which each of these defendants knew or reasonably should have known would result in constitutional injury to Aaron.

30. Defendants Drs. Christ, Bowen, and Dingle also Personal capacity liability under 42 U.S.C. § 1983 because each of them was a state actor under color of law and created a particularized, foreseeable danger, and acted with deliberate indifference to that danger with resulting injury to Aaron.

31. In each instance alleged, each Defendant's conduct violated clearly established federal and state law and, also, federal constitutional rights of which a reasonable person in the position of each Defendant would have known.

32. At all times relevant, Defendants and their agents and employees had a duty to employ a sufficient number of staff and to operate the AzSH under policies, procedures and rules to provide nursing and related services to attain or maintain physical, mental, and psychosocial well-being. Each defendant failed to fulfill these duties.

33. At all times relevant, each Defendant and his or her agents and employees had a duty to provide for the safety of patients, especially vulnerable patients like Aaron, by operating the AzSH under policies, procedures, and rules that afford each patient with adequate monitoring, supervision, and security to prevent injury at the hands of other patients. Each Defendant failed to fulfill these duties.

34. At all times relevant, each Defendant and his or her agents and employees owed a duty, in accordance with recognized professional standards applicable to each individual's profession, to provide monitoring, supervision, and control over other patients to protect Aaron's safety and to prevent injury at the hands of other patients. Each Defendant failed to fulfill these duties.

35. Each Defendant specifically knew or should have known of the threat posed by both Murray and Duey to the safety of other patients.  Murray and Duey were known to Defendants Tupas Milner, Skaggs, and Drs. Dingle and Bowen to be highly assaultive to patients, staff, and members of the public.

36. Defendants Drs. Christ, Bowen, Dingle, and their agents and employees failed to develop appropriate and adequate rules, policies, and procedures, and practices to manage dangerous patients like Murray and Duey, and to protect Aaron and other patients from these two dangerous patients.

37. Defendants Drs. Christ, Bowen, Dingle and their agents accepted tolerated, and facilitated routine patient-on-patient attacks and resulting injuries which were caused by AzSH staff, like Ms. Tupas Miliner, failing to adhere to reasonable standard of professional conduct follow or to even follow meager existing policies intended to protect patient safety.

38. Defendants Drs. Christ, Bowen, and Dingle intentionally manage these incidents my merely transferring violent offenders from unit to unit in order to

camouflage the severity of patient violence at AzSH.  Hence, after moving around in the civil Hospital, AzSH Duey eventually moved him to the Forensic Hospital. Both Duey and Murray are shuffled from unit to unit in the Forensic Hospital as they continue to assault others.

### AARON WALLACE

**39.**	Aaron Wallace was born September 9, 1982 and has been mentally ill most of his life.  He essentially grew up in Arizona's public behavioral health system.  Eventually, Aaron was designated as Seriously Mentally Ill (SMI) and received services through the Regional Behavioral Health Authority (RBHA) in Tucson.

**40.**	By his early 20s, Aaron's primary diagnosis was Schizoaffective Disorder, Bipolar Type followed by Anxiety Disorder, Unspecified and Attention-Deficit Hyperactivity Disorder (secondary), and Post-Traumatic Stress Disorder, Unspecified (tertiary). Aaron also suffered learning disabilities.

**41.**	Aaron's first committal to AZSH was from March of 2003 through March of 2004. His second committal at AZSH was from April of 2005 through November of 2006.  His third committal began August 17, 2011 after he was adjudicated Guilty Except Insane ("GEI") and ended in late January of 2019.

**42.**	As of October 3, 2017, AZSH had been Aaron's home for six years.  Sadly ironic, after an early life filled with trauma, abandonment, and abuse, Aaron had a stable environment, albeit in a locked institution.  That would soon end, however.

### Assault by Reuben Murray

**43.**	Beginning August 14, 2017, Aaron and his peers on Mohave Unit faced an imminent threat: Reuben James Murray.  Murray, a convicted murderer, had been on release from AZSH and was living in the community, but he was ordered returned to AZSH after his room-mate obtained a protective order against Murray.

**44.**	Murray is a "giant of a man" who stands well over about 6' tall and weighs at least 250 lbs. And Murray is a dangerous, angry man.   He has a lengthy criminal history.   In addition to juvenile arrests, Murray has been convicted of aggravated assault (CR2000-18695) and murder (CR2006-114360).  Briefly, in the early morning hours on

November 20, 2000, Murray was on the streets, came out of the darkness, and attacked a man and his 15-year-old son as they walked past. He remained in jail undergoing competency evaluations until 2005 when he was found not competent/not restorable and the 2000 criminal case was dismissed. The next year, Murray was indicted for murder, found guilty except insane, and entered AzSH in September of 2006.

45.     Shortly after his return to AzSH on August 14, 2017, Murray began threatening and assaulting patients and staff … as he had done in the past. Lacking any meaningful response from AZSH administration, and fearing for their safety and lives, patients on Mohave prepared and signed a petition expressing their fear of Reuben and asking that Murray be moved. The Petition was faxed to Defendant Skaggs, who ignored it.    Aaron, who stands about five feet tall, was an easy target.

46.     Although mentally ill and committed by court order to AZSH, the patients on Mohave Unit who asked for protection from Murray proved more insightful and prescient than the Defendants. Within a week of the assault on Aaron, Murray's mental instability and threat of violence was building. The day before he assaulted Aaron, Murry assaulted another patient, Lane Roberts, and a few days prior attempted to assault a third patient, David Bernstein.

47.     Although mentally ill and committed by court order to AZSH, the patients on Mohave Unit who asked for protection from Murray proved more insightful and prescient than staff. In the early hours of the morning on October 3, 2017, as Aaron slept in his room with his door closed, Murray was walking unrestrained in the hallway outside patients' rooms … and he was carrying a sharpened pencil as a weapon. Murray's early morning predation was eerily similar to his 2000 crime.    Two AZSH staff members (including one RN) opened Aaron's door … with Murray standing behind them in the hallway. They gave Murray what he sought: an easy victim.    As he slept behind a door at AZSH, Aaron Wallace enjoyed no more than Murray's victims on the Phoenix streets back in 2000.

48.     Joselyn Tupas Miliner (RN 97262) described in her Progress Notes dated October 3, 2017, at 0536:

-9-

> *Objective/Assessment: Writer and another staff were doing rounds at 0430 hours. As we opened the door to Aaron's room, one pt who was standing in the hallway suddenly pushed this writer aside and went inside Aaron's room. The said pt proceeded right away to hit Aaron who was lying in bed. Code gray was called. Staff tried to separate them, and aron got up and came out of his room. The other pt was so strong that the staff can't hold him, and he also came out and got hold of Aaron again. Staff in the unit and the 2 patients involved were all down in the floor. 3 Staff were able to physically hold the pt who was attacking Aaron, and the other 2 staff took Aaron to the treatment room.*

49.   In short, Miliner was so ill-trained, negligent, and deliberately indifferent as to open Aaron's door while Murray, stood behind her, waiting for the opportunity to assault Aaron.  There was no reason for Murray to be in the hallway or to be lurking behind Defendant Tupas Miliner. There was no reason for Tupas Miliner to open Aaron's door knowing that Murray was lurking behind her.

50.   After the first attack, when Aaron managed to crawl away out of his room, AzSH staff were so ill-prepared to deal with patient-on-patient violence that they could not even prevent a second assault by Murray.  And so, despite Aaron fleeing his room, Murray "got hold of" him again and continue stabbing him.

51.   In fact, nurse Miliner falsified her report to reflect that Aaron was "hit" when, in fact, she knew that he had been stabbed repeatedly and was bleeding profusely

52.   There were no security officers in Mohave Unit on October 3, 2017.   In fact, AzSH no longer employs "Security Officers" and has no security personnel positioned in each patient unit.  Instead, AzSH employs "Campus Support" personnel and positions them in a central location, thus requiring these staff to run from one building to another in case of an emergency.  Aaron was very lucky that other AzSH clinical staff risked injury to themselves when they jumped in and managed to pry Murray off of Aaron enough so that other staff could drag Aaron away.

53.   Aaron was transported to Maricopa Integrated Health Service (MIHS) and admitted to the Trauma Service.  Records from MIHS indicate that Aaron was stabbed in the neck, left elbow, face ("multiple sites"), and scalp (anterior and posterior).  His neck required surgical exploration, suturing (staples) and follow-up care.

54. But physical wounds are not all that Aarons suffered. Aaron has a lengthy history of trauma and violence inflicted by others. Yet he received no treatment for trauma for this incident --- no counseling; no therapy; no other supports.

### Assault by Brandon Duey

55. Brandon Duey is a highly assaultive, dangerous individual who has long been committed to AZSH for his own and other's safety. Duey is very tall and towers over Aaron ... and most average sized individuals.

56. Duey has been moved from unit to unit and housed with both forensic and civil patients but he continues to assault staff and patients … all due to AzSH's inadequate clinical and safety policies, practices, and practices.

57. Duey's first assault on Aaron occurred when Aaron was waiting to get food in the dining/kitchen area. Duey apparently objected to Aaron's presence and attacked him. Aaron suffered scratches and bruises.

58. Duey's second assault on Aaron occurred later that same day while Aaron was sitting in a chair next to an AZSH staff member, conversing, and watching television. Unaccompanied by any staff member, Duey walked over and again attacked Aaron. A fight ensued, which staff managed to end, and Aaron got away from Duey. Aaron again suffered scratches and bruises

### COUNT 1 – FAILURE TO PROTECT UNDER ARIZONA LAW
### (Defendants Drs. Christ and Bowen as to Murray Assault)

59. Plaintiff incorporates as if fully stated here the allegations of all previous and subsequent paragraphs of this Complaint.

60. Defendants each knew Murray's and Duey's history and knew or should have known that AzSH staff's routine failure to properly monitor and/or supervise these kinds of patients created a degree of risk of serious harm or death to patients like Aaron. Defendants knew that AZSH staff violated "Close Observation" or "1 to1" policy permitting Murray and Duey to have access topatients like Aaron without sufficient immediate control by staff.

-11-

61. Defendants had the duty to: (i) maintain proper rules, policies, and procedures, to assure that staff-controlled patients like Murray protected other patients from these patients' violence, and (ii) train and supervise AZSH employees like Defendant Tupas Miliner in the performance of their job responsibility, including protecting other patients from violent acts of patients like Murray. Defendants failed in performance of each of these duties knowingly accepted and tolerated a culture of well-established practices that permitted violent patient-on-patient assaults.

62. Defendants knew or should have known that Defendant Dingle failed in his duties as CMO of the AzSH to assure that AzSH had adequate clinical policies, procedures, and treatment protocols for management and control of violent patients, that clinical staff were competent and trained to manage violent patients, and that clinical staff were properly supervised to assure compliance with appropriate clinical management.

63. As a direct and proximate cause of Defendants' breach of their duties and their negligent conduct and failure to supervise, Aaron suffered physical injuries, underwent surgery and experienced emotional anguish and physical pain and suffering. He carries physical scars from the stab wounds and continues to relive the traumatic event.

64. Each Defendants acted to serve his or her own interest, and each knew and negligently and consciously disregarded a substantial risk that their conduct might injure Aaron by failing to protect him from assault by others.

65. Each Defendant's negligent and grossly negligent actions and inactions were the legal and proximate cause of Aaron's injuries.

**COUNT 2 – NEGLIGENCE PER SE**

**(Defendants Christ and Bowen as to Murray Assault)**

69. Plaintiff incorporates as if fully stated here the allegations of all previous and subsequent paragraphs of this Complaint.

70. Federal and State laws and regulations define a legal and regulatory framework AzSH must satisfy in managing patients, including Aaron and his assailant, Murray.

71. Aaron was a member of the class which state and federal statutes and rules we enacted to protect.

72. As the Director of the ADHS and the Superintendent of the AzSH, Defendants Drs. Christ and Bowen, respectively, had the duty to adhere to and abide by applicable state law regarding protection of patients like Aaron.

73. By ignoring the threats posed by Murray and Duey, each Defendant breached his or her duties and caused Aaron's injuries, and violated state and federal statutes and rules and law enacted for Aaron's protection. Such violations constitute *per se* negligence.

74. Aaron suffered injury and harm as a result of Defendants' *per se* negligence.

## Count 3 - Federal Law – 42 U.S.C. § 1983

**(Defendants Drs. Christ, Bowen, and Dingle - Assault by Murray and Duey; Defendant Tupas Miliner – Assault by Murray)**

75. Plaintiff incorporates as if fully set forth here each of the allegations of all previous and subsequent paragraphs of this complaint.

76. At all times all defendants were acting under color of law by virtue of Aarons' court-ordered commitment to the custody of the AzSH.

77. At all times that Aaron was confined at AZSH, clearly established federal law under the Eighth and Fourteenth Amendments afforded him a due process right to be provided safe conditions in the institution exercising care and custody over them. Accordingly, defendants are not entitled to qualified immunity for their acts and failure to act regarding Aarons safety.

78. In the face of known threats to patient safety and unconstitutional acts by employees, hospital administrators acting under color of law may not act (or fail to act) with conscious or deliberate indifference to the patient's safety.

79. The liability of Defendants Drs. Christ, Bowen, and Dingle rests on the fact that these administrators knew of the ongoing violations of constitutional rights by staff relative to patient-on-patient assaults and consciously and deliberately remained indifferent to those violations and intentionally let them continue.

80. The actions and inactions by Defendants Drs. Christ, Bowen, and Dingle were such a substantial departure from reasonable professional judgment and practice and as to amount to conscious indifference and/or lack of demonstrate that the person responsible actually did not base the decision on reasonable professional judgment or practice.

81. In exercising their duty to ensure a patient's safety, the Fourteenth Amendment requires that state mental hospital employees exercise professional judgment consistent with accepted judgment, practice, and standards of a reasonable professional in each relevant field.

82. The decisions of each Defendant were such a substantial departure from reasonable professional judgment and practice and as to amount to conscious indifference and/or demonstrate that each Defendant actually did not base the decision on such a judgment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Aaron Wallace prays for judgment against Defendants, jointly and severally, each of them, including:

A. For compensatory and punitive damages in a reasonable and appropriate amount as provided by applicable state and/or federal law;

B. For Plaintiff's costs and expenses in prosecuting this matter;

C. For Plaintiff's reasonable attorneys' fees as provided under Arizona law and 42 U.S.C. §1983;

D. For reimbursement to governmental agencies for payments for medical care and other services necessitated by Defendants' abuse, neglect, and other wrongful conduct, to the extent of any such agencies claim liens, reimbursement rights, and/or subrogation rights against the damage awards in this action; and

E. For such relief, orders, and injunctions as the court deems appropriate.

DATED this 4th day of October 2019.

THE GIESZL FIRM

 /s/Holly R. Gieszl
Holly R. Gieszl
Attorney for Plaintiff

**THE GIESZL FIRM**
3200 North Central Avenue, Suite 1500
Phoenix, Arizona 85012
602-277-0772

**CERTIFICATE OF COMPLIANCE**

The foregoing pleading electronically filed this 4th day of October, 2019, with: the Clerk of the United States District Court using the CM/ECF System and transmittal to the following registrants:

James B Bowen
Office of the Attorney General - Phoenix
2005 N Central Ave.
Phoenix, AZ 85004-1592

Kimberly D Chamberlain
Office of the Attorney General - Phoenix
2005 N Central Ave.
Phoenix, AZ 85004-1592

Robert C. Stultz
Campbell, Yost, Clare & Norell, P.C. 3101 North Central Avenue, Suite 1200 Phoenix, Arizona 85012
*Attorneys for State Defendants*

John DiCaro
Jones Skelton & Hochuli, P.L.C.
40 North Central Avenue, Ste. 2700 Phoenix, Arizona 85004
*Attorney for Defendant Tupas-Miliner*

/s/ Holly R. Gieszl